## Farmers First National Bank v.
## Hyman Enterprises

*Geisenberger, Zimmerman, Pfannebecker &*
*Gibbel,* and *Krank, Gross, Notturno & Casper,* for
exceptant.
*Charles V. Snyder, Jr.,* contra.

BROWN, *J.,* May 9, 1975—Before the court in this
matter are the exceptions of Farmers First National
Bank ("bank") and Hyman Enterprises ("Hyman")
to an item of $4,115.01, being poundage claimed
by Frederick B. Plowfield, sheriff ("Sheriff ") as a
result of an execution on real estate of Hyman by
bank. These exceptions are taken to the sheriff's
return in which the aforesaid poundage was
claimed.

In order to get the matter in proper focus, the court
quotes in full a stipulation entered into by all the
parties here involved. Counsel for the sheriff has
agreed to all the paragraphs of the stipulation except

paragraphs 3, 4, 5, 6, and 8. As the writer of this opinion has complete personal knowledge of the excepted paragraphs, having participated in the arrangements therein set forth, the court will adopt this stipulation in toto with the exception of paragraph 3 of which the court has no knowledge but the facts therein stated are not relevant to this opinion in any event.

## STIPULATION

"It is hereby Stipulated and Agreed by Counsel of Record, that the following is a statement of the pertinent facts in the above case:

"1. On October 23, 1973, the Sheriff of Lancaster County levied on real estate owned by Hyman Enterprises (being a tract of land containing 5.739 acres between the Oregon Pike and the Lititz Pike Manheim Township, Lancaster County, Pennsylvania), as directed to by Writ of Execution issued to Judgment No. 2629 of 1973 by Farmers First National Bank. The real debt set forth therein was $820,003.13.

"2. On the same date (October 23, 1973), the Sheriff of Lancaster County also levied on real estate owned by Spring Valley Homes, Inc. (being a tract of unimproved land containing 111.165 acres in East Hempfield Township, Lancaster County, Pennsylvania) as directed to by Writ of Execution issued to Judgment No. 1725 of 1973 by Farmers First Bank. The real debt set forth therein was $206,047.63.

"3. The partners of Hyman Enterprises were also the sole shareholders of Spring Valley Homes, Inc. and the two entities were affiliated.

"4. On or about November 14, 1973, Donald F. Krank, attorney for Hyman Enterprises and Spring

Valley Homes, Inc. appeared in Judge W. Hensel Brown's chambers with the intention of presenting Petitions for Stay of Execution in both above-captioned matters.

"5. Under the direct supervision of the Court, Jacques H. Geisenberger, Jr., attorney for Farmers First National Bank and Donald F. Krank assented to the following:

"(a) The Spring Valley writ would be satisfied;

"(b) The Petitions for Stay of Execution would not be filed; and

"(c) The scheduled Hyman Enterprises' sale would be continued until December 19, 1973.

"6. Pursuant to the Court's supervised compromise, on November 21, 1973:

"(a) The sale of Hyman Enterprises' property was continued until December 19, 1973 by Jacques H. Geisenberger, Jr., attorney for Farmers First National Bank; and

"(b) The Writ of Execution on Spring Valley Homes, Inc. was paid in full and satisfied.

"7. As a result of the satisfaction of the Writ of Execution on Spring Valley Homes, Inc., the Sheriff received a commission of $1,045.23.

"8. On December 19, 1973, the sale of the Hyman Enterprises property was continued by order of Judge W. Hensel Brown until January 25, 1974 conditioned upon the payment of $11,000.00 by Hyman Enterprises to Farmers First National Bank, which was paid.

"9. On January 25, 1974:

"(a) Sale of Hyman Enterprises' property was scheduled for 1:00 P.M.;

"(b) Attorneys for Hyman Enterprises presented a Petition for a Stay of Execution which was denied by Judge Brown at approximately 12:00 noon;

"(c) At approximately 12:45 a Petition for Reorganization under Chapter XI of the Bankruptcy Act was filed and an order restraining said sale was issued by the United States District Court for the Eastern District of Pennsylvania.

"(d) The sale of Hyman Enterprises' property was then postponed until 2:00 P.M. by the Sheriff of Lancaster County.

"(e) In order to avoid potential liability, either on behalf of the Sheriff or on behalf of the Bank, attorneys for Farmers First National Bank continued the sale for twenty (20) days to enable a copy of the restraining order to be filed.

"10. On February 20, 1974, attorneys for Hyman Enterprises filed a copy of the order of the United States District Court for the Eastern District of Pennsylvania restraining the sale on April 22, 1974.

"11. On April 22, 1974, said restraining order was removed by said Court.

"12. On April 23, 1974, a deed dated April 22, 1974 was recorded in the Recorder of Deeds Office in Deed Book E, Volume 65, Page 411, from Hyman Enterprises, defendant debtor, to Farmers First National Bank, plaintiff creditor, for subject real estate at a stated consideration of $2,000,000.00.

"13. At settlement for said property the sum of $4,500.00 was placed in escrow with Lancaster Title Abstracting Company for the payment of fees, costs and expenses including poundage charged by the Sheriff of Lancaster County.

"14. On or about April of 1974, the Sheriff was informed verbally by Jacques H. Geisenberger, Jr., attorney for Farmers First National Bank that the said execution was to be withdrawn as a settlement had been effected between plaintiff and defendant.

"15. On April 26, 1974, there was satisfied on the records a mortgage on said subject real estate, dated February 20, 1973, from Hyman Enterprises to Farmers First National Bank for $825,000.00, recorded in the Recorder's Office in Mortgage Book 995, Page 49, upon the bond or note of which said execution was issued by Farmers First National Bank.

"16. No money from this settlement passed through the hands of the Sheriff.

"17. The Sheriff by letter of May 28, 1974 directed to Geisenberger, Zimmerman, Pfannebecker and Gibbel, attorneys for Farmers First National Bank, presented an itemization of costs due in said execution which included a Sheriff's commission of $4,115.01, based on the real debt of $820,003.13, and demanded payment thereof. It is to this determination of Sheriff's commission of $4,115.01, which Farmers First National Bank and Hyman Enterprises have taken exception.

"

Attorney for Sheriff of Lancaster County

"/s/ J. H. Geisenberger, Jr.

Attorney for Farmers First National Bank

"/s/ Kenneth C. Notturno

Attorney for Hyman Enterprises

[In longhand there appears the following:]

"I hereby agree to the above stipulation with the exception of paragraphs Nos. 3, 4, 5, 6 and 8.

"/s/  Charles V. Snyder, Jr.
Attorney for Sheriff of Lancaster County"

In addition to the foregoing stipulation, it appears from the records and docket entries that on July 23, 1974, judgment was entered in favor of the sheriff against bank for outstanding sheriff's costs, including the $4,115.01, the sum here in dispute. Pursuant to petitions and stipulations, this judgment was stricken and bank and Hyman were given ten days to file exceptions to the sheriff's statement of costs and return, which was done. These exceptions, as stated, involved the claim of the sheriff for the $4,115.01 poundage on which the court will now make a determination of whether this sum is due, or not due, to the sheriff.

The court has carefully and fully read all the lower court decisions on this poundage issue, including its own decision in Whitehall Associates v. Sheriff, 61 Lanc. 509 (1968), and concludes that there is no uniform or consistent approach to this issue by the lower courts of Pennsylvania. No appellate case appears which is relevant to the issue here. In short, these lower court opinions seem to rest on the specific facts and circumstances of each case. Some hereinafter cited cases would appear to disallow the sheriff's poundage under facts somewhat similar to the instant case. On the whole and considering the best reasoning of those cases which allowed poundage and the rationale of this court, the equities favor the allowance of poundage to the sheriff in this case.

Sheriff makes his claim under the Act of May 9, 1949, P. L. 927, as last amended by the Act of June 14, 1961, P. L. 350, 16 P.S. §11301, which covers the fees, mileages and allowances of sheriffs in counties

other than counties of the first class, which provides, inter alia:

". . . (b) For executing writs of *"levari facias, fieri facias, venditione exponas"* or any writ or order issued out of any court, requiring the levy and seizure of lands and tenements or selling the same according to law, the following items, . . ." (Here follow specific charges covering various items.)

The act then states as follows:

"In addition, the sheriff shall charge and receive, as an official fee, a commission charge of two cents on every dollar, based upon the total amount bid for the property, whether paid to the sheriff or credited to the purchaser: Provided, That the amount of same does not exceed one thousand dollars ($1000), in which case one-half cent (½c) on every dollar in excess of this amount shall be charged in addition. . . .

"(e) For the settlement or staying by the plaintiff of any writ embraced in any section of this act, relating to either lands and tenements or personal property, the execution of the same not being concluded, the sheriff shall receive the same fees for receiving, docketing, and returning, levying and advertising, with mileage and such commission as would be chargeable if sale had been made upon said writ for the amount paid to settle or stay the same, whether such sum be paid to him or to the plaintiff, or a compromise be made between plaintiff and defendant for the future payment of any sum to satisfy the same. . . ."

A recent case allowed poundage even though no money passed through the sheriff. The court in Metropolitan Life Ins. Co. v. Erie Commerce Building Corp., 41 D. & C. 2d 668 (Erie County, 1966), allowed poundage where plaintiff gave satisfaction piece

and ordered stay, return and satisfaction of the writ of execution. The parties entered into an agreement with a third party who paid certain sums to plaintiff and defendant. Poundage was allowed on the amount paid to plaintiff by the third party, even though this did not pass through the sheriff. In other words, poundage was allowed on the amount paid to stay the writ as provided for in 16 P.S. §11301(e) (1961), supra, amending 16 P.S. §11301(e) (1949, supra. The court in its opinion, at page 671, stated:

"We cannot agree with either the rationale or the result reached in that decision [referring to Hornak v. Kennedy, 31 D. & C. 515 (1938)], for it is in direct conflict with the plain, unambiguous language of subsection (e) of the statute providing that the sheriff shall receive the same fees 'for the settlement or staying by the plaintiff of any writ, . . . the execution of the same not being concluded, . . . with mileage and such commission, as would be chargeable if sale had been made upon said writ for the amount paid to settle or stay the same.

"Clearly, this means that the sheriff is entitled to his commission where the writ is stayed or a settlement has been reached, and that the commission is to be based on the amount paid to stay the writ, or the amount paid in settlement.

"To further explain and to emphasize the meaning and intent of this portion of the act, it goes on to say:

" '. . . whether such sum be paid *to him or to the plaintiff*, or a compromise be made between plaintiff and defendant for the future payment of any sum to satisfy the same.'

"Surely there can be no disagreement over these words, that it makes no difference whether the money is paid to the sheriff and then turned over to

plaintiff, or paid directly to plaintiff, or the parties provide for future payment.

"When the language of a statute is plain and unambiguous and conveys a clear, definite meaning, the statute must be given its plain and obvious meaning: Muldoon Unemployment Compensation Case, 170 Pa. Superior Ct. 625; Commonwealth ex rel. Cartright v. Cartright, 350 Pa. 638.

"The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 P.S. §551, states that:

" 'The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

" 'When the words of a law are free and clear from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'

"In our opinion, there is no ambiguity and, therefore, it is not the province of this court to contravene the intention of the legislature."

The court is fully aware of its decision in Whitehall Associates, supra. There, this court held that there was poundage owing only on the new money involved in the transaction and none in the amount of the new mortgage. The facts in Whitehall are distinguishable from the facts in the instant case. In this case, no third party was involved, but a settlement was made between bank and Hyman whereby Hyman conveyed said property to bank for a sizeable consideration over the real debt owed, and the mortgage on said property was satisfied in full by bank. In addition, the facts are distinguishable in that in Whitehall the execution creditor received no payment from the execution defendant and received back a mortgage in settlement.

In Concord-Liberty S. & L. Ass'n. v. N & C. Properties, Inc., 5 Butler 310 (1972), plaintiffs entered

judgment against defendant for $1,532,960.15, with interest and costs. At the execution sale plaintiffs were the successful bidders at their nominal bid of $50. The schedule of distribution posted by the sheriff included poundage of $7,679, which was based on the full amount of the creditor's lien. Plaintiffs paid this poundage to the sheriff under protest with an agreement that the sheriff would escrow said fund with final disposition of the fund conditioned on the outcome of the case stated. Thereupon, the sheriff delivered a deed for the real estate to plaintiff's nominee. The nominee will pay the mortgage indebtedness in full. The court stated the question to be whether a sheriff is entitled to collect a commission on the full amount of the debt and interest credited to the purchaser under Pa. R.C.P. 3133, or is he limited to a fee based on the nominal bid of the judgment creditor at the execution sale?

In holding in the affirmative, the court in its opinion stated as follows:

"With the above rule of construction in mind it is noted that paragraph (E) of the 'poundage' statute allows the sheriff a commission, in the event of a settlement or stay of the sale, in the amount paid to settle or stay the sale. The commission is based on what the sale produced. (16 P.S. 11301(e).)

"In a foreclosure action where an agreement results in the satisfaction of the mortgage it has been held that the sheriff is entitled to poundage on the debt and interest. Metropolitan Life Insurance Company vs. Erie Commerce Bldg. Corp., 41 D. & C. 2d 668 (1966).

"It would be inconsistent and anomalous for poundage to be collected on the amount of a settlement and not on the actual amount involved in a

sale. A narrow construction of the language 'credited to the purchaser' would be contrary to the intent of the legislature as expressed in the 'poundage' law as a whole.

"At the direction and at the expense of the purchaser the sheriff placed on the deed to purchaser's nominee transfer stamps totaling $31,148. This fact supports the proposition that the sale produced the debt and interest. It negatives the possibility of a deficiency judgment against the judgment debtor.

"It is clear that the knock-down price was the credit of $1,532,960.15 plus interest. On this amount of credit to the purchaser the sheriff was required to compute the commission."

In the recent case of City Line Investment Corp. v. Farber, 25 Bucks 35 (1973), the court held that poundage was allowable on the amount of money paid to stay the writ, not the real debt. This is in conformity with the practice of the Sheriff of Lancaster County. In the instant case, not being informed otherwise, he must assume from the facts of the case, that a full settlement of the real debt was made and base his commission on this amount.

In Pittsburgh National Bank v. General Housing Industries, Inc., 65 D. & C. 2d 175 (1974), Advance Reports of November 15, 1974, Northumberland County, the court held that the sheriff is entitled to poundage upon the amount of the bid only (which was for costs by plaintiff), rather than upon the fair value of the property sold. The facts are distinguishable however from this case. Here, the writ was stayed and settlement affected, no sale being held. The court in Pittsburgh said, at page 181:

"The sheriff cites the case of Metropolitan Life Insurance Co. v. Erie Commerce Building, 41 D. & C. 2d 668 (Erie County, 1966), in support

of his position. It fails to provide such support. The court in that case held that under the facts presented, the sheriff was entitled to receive a commission even though no money came into his hands. That is not the question at issue. The facts presented there were entirely different from those before us. The question in that case was what poundage the sheriff was entitled to receive when a settlement was effected between plaintiff and defendant before the execution sale was held. The answer was provided not by subsection (b) of section 1 of the 1949 Act with which we are concerned, but by subsection (e) which states: '(e) For the settlement . . . of any writ . . . , the execution of the same not being concluded,' the sheriff is entitled to receive, in addition to the usual fees, 'such *commission* as would be chargeable if sale had been made upon said writ for the *amount paid* to settle.' The court, adhering to the same principles of construction we have used in this opinion, held that the 'plain, unambiguous language of subsection (e) of the statute' clearly means 'that the sheriff is entitled to his commission where . . . a settlement has been reached, and that the commission is to be based on the amount paid . . . in settlement.' . . ." (Emphasis by Northumberland County Court.)

In the instant case, the facts of the recording of a deed for a consideration substantially over and above the real debt, and the satisfaction of the mortgage supports the proposition that the execution produced the real debt and under 16 P.S. §11301(e), supra, the sheriff is entitled to receive "such commission as would be chargeable if sale had been made upon said writ for the amount paid to settle or stay the same," even though no funds went through his hands.

And now, May 9, 1975, for the foregoing reasons, the exceptions of Farmers First National Bank and Hyman Enterprises to the sheriff's return and inclusion of a sheriff's commission or poundage of $4,115.01 are dismissed, and the court determines that the sheriff is entitled to this sum and orders and directs the parties hereto and their counsel to direct the Lancaster Title Abstracting Company, in whose hands $4,500.00 has been placed in escrow for the payment of fees, costs, and expenses, to pay the said $4,115.01 to Frederick B. Plowfield, Sheriff.